UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODERICK TOLBERT,

       Petitioner,
                                       CASE NO. 2:11-14921
                                       HONORABLE PAUL D. BORMAN
v.                                     UNITED STATES DISTRICT JUDGE

MITCH PERRY,

       Respondent.

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

      Roderick Tolbert, ("petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317; felon in possession of a firearm, M.C.L.A. 750.224f; possession of a firearm in the commission of a felony, second offense, M.C.L.A. 750.227b; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE**.**

## I. BACKGROUND

      Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

410, 413 (6th Cir. 2009):

> Defendant's convictions stem from the shooting death of Jackie Mullinax, whose body was found lying near the driveway of a vacant home in Detroit. Demetrius Moore testified that he worked for defendant, sold crack cocaine, and acted as the doorman at a crack house in Detroit.
>
> The drug house caught fire on the afternoon of February 23, 2007. Later that evening, around midnight, Moore met up with defendant and Mullinax so they could find a new location from which to sell crack. According to Moore's trial testimony, defendant picked up Moore in a van. Mullinax was sitting in the back seat. After driving a short time, defendant stopped the van, turned around and fatally shot Mullinax in the head. Moore jumped out of the van and began running. He encountered Dwight Dawson, whom he asked for a ride home. Dawson agreed. While in Dawson's car, Dawson asked Moore what he was doing in the area and Moore "blurted out" that a man named Jay (later identified as defendant) had just shot Mullinax.

*People v. Tolbert,* No. 288017, at 1 (Mich.Ct.App. February 16, 2010).

Petitioner's conviction was affirmed on appeal, although his case was remanded to the trial court for resentencing on the second-degree murder conviction. *Id; lv. den.* 488 Mich. 853, 787 N.W.2d 503 (2010). On resentencing, petitioner's sentence for second-degree murder was reduced from 26 to 50 years to 23 to 50 years.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Tolbert was denied a fair trial when the trial court allowed inadmissible hearsay evidence implicating him in the crimes.

II. Mr. Tolbert was denied a fair trial when the trial court permitted hearsay evidence in the form of a police report, which suggested that Mr. Tolbert tried to persuade someone else to commit the crime.

III. The trial court erroneously permitted the prosecutor to engage in improper rebuttal, which unfairly undermined the credibility of a critical defense witness and impermissibly bolstered the prosecutor's case.

IV. Mr. Tolbert is entitled to resentencing where his sentencing guidelines are incorrectly scored, and without the errors, his minimum sentence constitutes an unlawful and unintended departure from the guidelines.

V. Cumulative errors committed by trial counsel violated Petitioner's right to effective assistance as guaranteed by the Sixth Amendment.

    a. Failure to review the jail phone tapes *in toto* prior to stipulating to their contents.

    b. Failure to challenge the identification of Petitioner by C. Blakley and H. Smith.

    c. Failure to cross-examine the officer in charge (O.I.C.) of the case, Sgt. Jimenez, regarding how he procured the identity of Petitioner as the perpetrator of the charged offenses.

    d. Failure to present a defense of third party culpability.

    e. Failure to object to the scoring of PRV 7 and OV 8.

VI. The egregious misconduct of the O.I.C. deprived Petitioner of his constitutional right to a fair trial and due process of law.

VII. Petitioner was deprived of his constitutional right to due process of law at sentencing, where Prior Record Variable (PRV) 7 was scored in order to enhance his sentencing exposure, even though PRV 7 amounted to "double counting" as the same conduct was scored under offense variables, where offence variable 8 was incorrectly scored.

VIII. Petitioner's right to a fair trial and due process of law were violated when the prosecutor withheld exculpatory portions of the original phone conversations in violation of *Brady*.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S.

4

63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*  Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

     "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing petitioner's claims, this Court must

5

remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III. DISCUSSION

### A. Claims # 1 and # 2. The hearsay evidence claims.

The Court discusses petitioner's first two claims together for judicial clarity. In his first claim, petitioner contends that the trial court erred in admitting Demetrius Moore's out-of-court statement to Dwight Dawson into evidence as an excited utterance. In his second claim, petitioner claims that his right to a fair trial was violated by the introduction of Moore's out-of-court statement to a police detective, because it did not fall within any exception to the hearsay rule.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). Petitioner's claim that the trial court improperly admitted Moore's statement to Dawson under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review. *See e.g. Smith v. Jones,* 326 F. App'x. 324, 330 (6th Cir. 2009); *Williams v. White,* 183 F. Supp. 2d 969, 975-77 (E.D. Mich. 2002).

With respect to Moore's out-of-court statement to the police, the Michigan Court of Appeals concluded that this statement was admissible as a prior inconsistent statement to impeach Moore's trial testimony, after Moore had testified that he did not remember petitioner asking him to shoot the victim. *Tolbert,* Slip. Op. at 2-3.

Under Michigan law, evidence of a witness' prior inconsistent statement may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant. *Cathron v. Jones,* 190 F. Supp. 2d 990, 999 (E.D. Mich. 2002)(citing *People v. Kilbourn*, 454 Mich. 677, 682; 563 N.W.2d 669 (1997)); See also M.R.E. 613.  Any claim involving the improper admission of Mr. Moore's prior inconsistent statements is not cognizable in a federal habeas corpus proceeding. *See e.g. Bolton v. Nelson,* 426 F. 2d 807, 809 (9th Cir. 1970)(whether procedure followed by state court in permitting use of prior inconsistent statement was in violation of state decisional rule was not matter for federal district court to decide, on petition for habeas corpus); *See also Roland v. Mintzes,* 554 F. Supp. 881, 890 (E.D. Mich. 1983)(alleged misapplication of state law in impeachment by prosecutor of petitioner's accomplice with prior inconsistent statements was not cognizable in federal habeas corpus proceedings).  In the present case, the use of Moore's prior inconsistent statement did not render petitioner's trial fundamentally unfair, in light of the trial court's instruction to the jury that the prior inconsistent statements could only be used for impeachment purposes and not to prove the truth of the matter asserted (Tr. 7/15/08, p. 47), *See Christopherson v. Boone,* 49 F. App'x. 257, 261-62 (10th Cir. 2002), as well as the fact that the jurors were instructed that the lawyers' statements and arguments were not evidence. (Tr. 7/15/08, p. 45). *See Adams v. Holland*, 168 F. App'x. 17, 20 (6th Cir. 2005).  Simply put, the prosecutor's use of Moore's prior inconsistent

statement " did not transmute the statement's evidentiary use from impeachment to substantive evidence of guilt." *Id.* at 21.  Petitioner is not entitled to habeas relief on his first and second claims.

### B.  Claims # 3, # 6, and # 8.  The procedurally defaulted claims.

The Court discusses petitioner's procedurally defaulted claims next for judicial economy and clarity.  In his third claim, petitioner contends that the trial court allowed the prosecutor to call an improper rebuttal witness.  In his sixth claim, petitioner alleges misconduct on the part of the officer in charge of the case.  In his eighth claim, petitioner alleges that the prosecutor erred in failing to turn over the complete set of tape recordings of phone calls made by petitioner to Demetrius Moore while he was in jail.

Respondent contends that petitioner's third, sixth, and eighth claims are procedurally defaulted because petitioner failed to preserve the issues by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claims for plain error only. *Tolbert,* Slip. Op. at 3-5.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v.*

*Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his third, sixth, or eighth claims.  The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's third, sixth, and eighth claims does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d at 557.  Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claims for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).  In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's third, sixth, and eighth claims does not mean that these claims were not procedurally defaulted.  A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991).  Petitioner's third, sixth, and eighth claims are procedurally defaulted.        Petitioner has offered no reasons for his failure to preserve these three claims.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his third, sixth, and eighth claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his third, sixth, or eighth claims as a ground for a writ of habeas corpus in spite of the procedural default.  Because

petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's claims on direct appeal and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that his procedurally defaulted claims have any merit. In particular, the reasons justifying the denial of petitioner's procedurally defaulted claims were "ably articulated by the" Michigan Court of Appeals, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See e.g. Bason v. Yukins,* 328 F. App'x. 323, 324 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

**C. Claims # 4 and # 7. The sentencing guidelines claims.**

In his fourth and seventh claims, petitioner contends that several of the Offense Variables (OVs) and Prior Record Variables (PRVs) of the Michigan Sentencing Guidelines were incorrectly scored.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing

10

guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Petitioner's claim that the sentencing guidelines were incorrectly scored fails to state a claim upon which habeas relief can be granted. *See Cook v. Stegall,* 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

### D. Claim # 5. The ineffective assistance of counsel claims.

Petitioner next alleges that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*.

11

To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792)). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664)). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves

12

review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:
>
> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first contends that counsel was ineffective for failing to review in their entirety taped recorded telephone conversations made by petitioner to witness Demetrius Moore while petitioner was in jail prior to stipulating to their admission.  Petitioner claims that the tape recordings of these telephone calls were never accurately transcribed, thus, they should not have been admitted into evidence.  Petitioner further claims that there was information missing from the tapes that could have been used to impeach Moore's creedibility.

Petitioner is not entitled to habeas relief on this claim for several reasons.  First, petitioner failed to show that his counsel did not listen to the tape recorded conversations in

13

their entirety prior to stipulating to their admission.  On the first day of trial, defense counsel

indicated that he had listened to "numbing hours of tapes" that had been provided to him by the

prosecutor. (Tr. 7/9/08, p. 6).  Counsel objected unsuccessfully to the admission of these tapes

on the ground that they contained evidence of "other acts" evidence. (*Id.,* pp. 6-12).  On the

second day of trial, counsel, with petitioner's consent, stipulated to the admission of the jail

calls to the extent that the prosecutor was not required to satisfy a foundational requirement for

the admission of the tapes, but preserved his earlier objection that these tapes contained "other

acts" evidence. (Tr. 7/10/08, pp. 4-7).  There is nothing from the record to suggest that trial

counsel neglected to listen to the tapes in their entirety prior to stipulating to their admission.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do

not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

 Petitioner is also not entitled to habeas relief on this claim because he has offered no

evidence to establish that the tape recordings of his conversations from the jail were inaccurate

or incomplete.  Counsel's alleged failure to review the telephone voice recordings of petitioner

was not ineffective, because there is no evidence to support petitioner's conclusory assertions

that the recordings of these telephone calls were inacccurate or inauthentic. *See e.g. U.S. v.*

*Hernandez,* No. 07-20025; 2009 WL 415563, at 2 (E.D. Mich. February 18, 2009).

 Finally, petitioner has failed to show that any of the alleged missing telephone

recordings contained exculpatory information.  In his eighth claim, petitioner contends that the

allegedly missing telephone recordings could have been used to impeach Demetrius Moore's

testimony with evidence that Officer Jimenez showed Moore a photographic array containing

petitioner and petitioner's brother, that petitioner did not initiate contact between himself and

Moore after petitioner was arrested for this crime, and that Moore never told petitioner to stop calling him from the jail. The Michigan Court of Appeals rejected petitioner's *Brady* claim, in part, on the ground that the failure to produce such evidence did not prejudice petitioner, because the "untainted evidence" against petitioner "remained strong." *Tolbert,* Slip. Op. at 5. Because any such allegedly missing impeachment evidence did not exculpate petitioner, the Michigan Court of Appeals further concluded that counsel was not ineffective for failing to determine whether the jail phone tapes were accurate. *Id*. at 8.

Petitioner failed to show that his counsel was ineffective for failing to object to the accuracy of the telephone recordings from the jail because petitioner has failed to show, in light of the other evidence at trial, that such recordings would establish anything that could have changed the result of his trial. Accordingly, the Michigan Court of Appeals did not unreasonably apply *Strickland* in rejecting his ineffective assistance of counsel claim. *See e.g. Davis v. Burt*, 100 F. App'x. 340, 346-47 (6th Cir. 2004).

Petitioner next contends that trial counsel was ineffective for failing to object to the pre-trial identifications of him made by witnesses Cindy Blakely and Henry Smith, on the grounds that the identification procedures employed were unduly suggestive. Neither Blakely nor Smith testified at petitioner's trial. Petitioner offered no evidence either to the Michigan Court of Appeals or to this Court to show that the identification procedure employed by Officer Jimenez was suggestive. Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). In light of the fact that petitioner has failed to show that the lineup procedure was unduly suggestive, he has failed to show that his lawyer was

ineffective for failing to move for suppression of the pre-trial identifications. *See Perkins v. McKee,* 411 F. App'x. 822, 833 (6th Cir. 2011).

Petitioner next contends that trial counsel was ineffective for failing to cross-examine Officer Jimenez about how he obtained the identity of petitioner as the shooter. Officer Jimenez testified that based on Moore's and Dawson's statements, he determined that a man nicknamed "Jay" had committed the shooting. At this stage of the investigation, Officer Jimenez did not know what Jay's real name was. Officer Jimenez testified that, through the use of connections and informants, he discovered that "Jay" was petitioner.

The Michigan Court of Appeals rejected petitioner's claim:

> Even assuming that non-testifying witnesses Blakely and Smith were the first ones to identify defendant as Jay, it is unclear why this would be damaging to the prosecution's case, particularly where Moore testified unequivocally at trial that Jay was defendant.

*Tolbert,* Slip. Op. at 8-9.

Although other attorneys might have reached a different conclusion about the value of cross-examining Officer Jimenez about how he came to determine petitioner's identity as the shooter, counsel's strategic choice not to cross-examine Officer Jimenez was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002)(quoting *Strickland,* 466 U.S. at 689)). Indeed, counsel's strategic choice to forego more in-depth cross-examination is "virtually unchallengeable" because it appears to have been a strategic decision made to avoid eliciting damaging information against petitioner. *Id.* Finally, petitioner has failed to identify how additional impeachment of Officer Jimenez on the identification issue would have affected the jury's decision, in light of the fact that Demetrius Moore positively identified petitioner at trial as the shooter. Defense counsel did not perform

16

ineffectively by not more forcefully cross-examining Officer Jimenez, particularly when the effect of further probing is entirely speculative on petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012).

Petitioner next contends that his counsel was ineffective for failing to pursue a defense of third party culpability by suggesting that Demetrius Moore was the actual shooter or at least participated in the shooting.

In the present case, counsel chose to advance an alibi defense and attack the credibility of Moore. Little, if any, evidence supported a defense that Moore murdered the victim. Since there was little or no evidence linking Moore to the murder, trial counsel was not ineffective in failing to pursue a third party culpability defense. *See e.g. Robins v. Fortner,* 698 F. 3d 317, 331 (6th Cir. 2012).

Petitioner lastly claims that trial counsel was ineffective for failing to object to the scoring of PRV 7 and OV 8 of the Michigan Sentencing Guidelines. The Michigan Court of Appeals concluded that PRV 7 and OV 8 were correctly scored, thus, counsel was not ineffective for failing to object to the scoring of these variables. *Tolbert,* Slip. Op. at 9.

In this case, the trial judge concluded that there was a factual basis for the scoring of PRV 7 and OV 8 under Michigan's Sentencing Guidelines, and the Michigan appellate courts upheld this ruling, thus, petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines. *See Coleman v. Curtin*, 425 F. App'x. 483, 485 (6th Cir. 2011). Petitioner is not entitled to habeas relief on his fifth claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a

certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.   Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**IV. CONCLUSION**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas

corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma*

*pauperis*.

**SO ORDERED.**


                                          s/Paul D. Borman_____
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2014



CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or
party of record herein by electronic means or first class U.S. mail on February 26, 2014.


                                          s/Deborah Tofil_____
                                          Case Manager


19